CHRISTOPHER CHIOU
Acting United States Attorney
Nevada Bar No. 14853
RANDOLPH J. ST. CLAIR
Assistant United States Attorney
400 South Virginia, Suite 900
Reno, Nevada 89501
775-784-5438
Randy.StClair@usdoj.gov

*Representing the United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:20-cr-00054-RCJ-CLB |
| Plaintiff, | **Government's Response in Opposition to Defendant's Motion to Dismiss [ECF No. 36]** |
| v. | |
| ALFREDO SALAS-SILVA, | |
| Defendant. | |

**Certification: This response is timely.**

### INTRODUCTION

Relying on the district court's order in *United States v. Carrillo-Lopez*, 555 F.Supp. 3d 996 (D. Nev. 2021), Defendant Alfredo Salas-Silva moves this Court to dismiss the indictment against him on the ground that Section 1326 violates the equal protection guarantee of the Fifth Amendment. As explained below, the Court should deny that motion for two reasons. First, Salas-Silva's motion fails to include points and authorities as required by this Court's rules. Second, and as every other federal court to consider that decision agrees, *Carrillo-Lopez* was wrongly decided. The U.S. Solicitor General authorized

a government appeal of the district court's decision in *Carrillo-Lopez*, and that appeal is now pending in the Ninth Circuit. This Court should likewise decline to follow *Carrillo-Lopez,* and should deny Salas-Silva's motion.

## POINTS AND AUTHORITIES

### I. The Court Should Summarily Deny Salas-Silva's Motion for Failure to Include Points and Authorities.

Salas-Silva's motion includes no points and authorities, and makes no legal argument to which the government can respond. Instead, it simply purports to "incorporate[] by reference" the "record" in *Carrillo-Lopez*. ECF No. 36; *but see* D. Nev. Local Rule LCR 47–3 ("The failure of a moving party to include points and authorities in support of the motion constitutes a consent to denying the motion."). While Salas-Silva cites to one case in which a similar motion was granted, *see* ECF No. 36 at 2 (*citing United States v. Carlos-Vasquez-Ortiz*, 3:21-cr-23-MMD-WGC), that motion was granted by the same district judge who decided *Carrillo-Lopez*, and who remains the only district judge in the federal system to have accepted the argument put forth in *Carrillo-Lopez*.

Other courts presented with similar requests have uniformly declined to adopt *en masse* the record of *Carrillo-Lopez*, with several commenting that it would be inappropriate to do so. *See, e.g., United States v. Sanchez-Felix*, No. 21-CR-00310-PAB, 2021 WL 6125407, at *7 n.3 (D. Colo. Dec. 28, 2021), *reconsideration denied*, No. 21-CR-00310-PAB, 2022 WL 159814 (D. Colo. Jan. 18, 2022) (noting it would be "inappropriate to adopt the factual findings of another court"); *United States v. Sifuentes-Felix*, No. 21-CR-337-WJM, 2022 WL 293228, at *3 (D. Colo. Feb. 1, 2022) (noting the defendant "merely refers the Court to *Carrillo-Lopez*" and that "this type of cursory, conclusory argument does not cure

Defendant's Motion of the problems that almost every other court addressing the exact issue has found fatal to that argument"); *United States v. Ponce-Galvan*, No. 21-CR-02227-H-1, 2022 WL 484990, at *3 n.3 (S.D. Cal. Feb. 16, 2022) (declining to adopt factual findings of *Carrillo-Lopez* and noting that factual findings in one case are ordinarily not admissible for their truth in another case through judicial notice) (*citing Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003)).

As these and other courts have held, the Court is not charged with making a party's argument for him. *See*, *e.g.*, *Sifuentes-Felix*, 2022 WL 293228 at *3 (holding that party who fails to support his point with pertinent authority, or to explain voluminous evidence cited, forfeits his point). "*United States v. Dunkel* famously held that, 'Judges are not like pigs, hunting for truffles buried in briefs.' 927 F.2d 955, 956 (7th Cir. 1991). Just as a judge need not hunt for truffles in briefs, a judge need not hunt for legal authorities where a party has made no effort to present them." *Ceran v. Reisch*, No. 19-CV-2048-MAR, 2020 WL 6074189, at *2 (N.D. Iowa July 17, 2020). Accordingly, the Court should summarily deny Salas-Silva's motion because his motion is plainly insufficient to warrant the Court's consideration.

**II.   In the Alternative, the Court Should Deny Salas-Silva's Motion Because Section 1326 Is Constitutional.**

If the Court is inclined to consider Salas-Silva's motion and permit his "incorporation by reference" of pleadings in a different criminal case, it should deny the motion for lack of merit. Section 1326 is constitutional, and the sole authority on which Salas-Silva relies is unpersuasive, as every subsequent court to review *Carrillo-Lopez* has recognized.

As the government argued in its opposition to the motion to dismiss in *Carrillo-Lopez,* and as we explain in our opening brief on appeal in the Ninth Circuit, the *Carrillo-Lopez* court erred in three primary respects. First, it erroneously concluded that the framework set forth in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) applied to Carrillo-Lopez's claim. Second, it erred in finding sufficient evidence to show that the passage of section 1326 in 1952 was motivated by racial animus. And third, it was wrong to conclude that Congress would not have criminalized illegal reentry had it not been for racial animus. This Court should decline to follow that decision.

      **A.**    *Carrillo-Lopez* **Erred In Applying the** *Arlington Heights* **Framework to a Challenge to Section 1326.**

"For reasons long recognized as valid," the Supreme Court has explained, "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976). "Because decisions in these matters may implicate 'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances,' such judgments 'are frequently of a character more appropriate to either the Legislature or the Executive.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2418-19 (2018) (quoting *Mathews*, 426 U.S. at 81). "The reasons that preclude judicial review of political questions" thus "also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization," *Mathews*, 426 U.S. at 81-82—including congressional enactments that "regulate the admission and exclusion of aliens." *Fiallo v. Bell*, 430 U.S. 787, 793 n.5 (1977).

The Ninth Circuit has equated that narrow standard of review with the rational-basis test applied to other classifications that do not affect "fundamental rights nor proceed along suspect lines," *Heller v. Doe*, 509 U.S. 312, 319 (1993) (quotation marks omitted). *See, e.g.*, *Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1049 (9th Cir. 2017) (en banc). "Under the rational basis test, a federal policy survives an equal protection challenge if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *United States v. Ayala-Bello*, 995 F.3d 710, 715 (9th Cir.) (quotation marks omitted), *cert. denied*, 142 S. Ct. 513 (2021).

Section 1326 regulates the admission and exclusion of foreign nationals, the core power of Congress and the Executive that the Supreme Court has held largely immune from judicial review in *Trump v. Hawaii*, 138 S. Ct. 2392 (2019); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977); and *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972). Section 1326 not only criminalizes reentry into the country but creates a continuing offense from the moment of entry until the defendant is found within the United States. *See United States v. Rincon–Jimenez*, 595 F.2d 1192, 1194 (9th Cir. 1979). While Carrillo-Lopez argued that the *Arlington-Heights* framework applied to his claim because he was physically present within the country, he was only present by virtue of committing the crime that led to his indictment. The district court in *Carrillo-Lopez* nevertheless refused to grant Congress the deference it is due in immigration matters, simply because Carrillo-Lopez had chosen to ignore the law here. This was error.

Given the economic and national security interests in allowing the government to enforce its power to exclude, the district court in *Carrillo-Lopez* erred in applying *Arlington Heights* rather than the more deferential standard set forth in *Trump*, *Fiallo*, and *Kleindienst*.

Several district courts reviewing *Carrillo-Lopez* have reached this conclusion, and denied similar motions on the grounds that section 1326 plainly has a rational basis. *See, e.g.*, *United States v. Maurico-Morales,* No. CR-21-298-R, 2022 WL 99996, at *1 (W.D. Okla. Jan. 10, 2022) (holding that rational basis review applies, but that defendant's challenge would fail under *Arlington Heights* as well); *United States v. Rivera-Sereno*, No. 2:21-CR-129, 2021 WL 5630728, at *4 (S.D. Ohio Dec. 1, 2021) (holding that "application of *Arlington Heights* to an immigration law challenge is misplaced and contrary to long standing United States Supreme Court precedent"); *United States v. Samuels-Baldayaquez*, No. 4:20-cr-83, 2021 WL 5166488, at *2 (N.D. Ohio Nov. 5, 2021); *United States v. Orozco-Orozco,* No. 21-CR-02349-TWR, 2021 U.S. Dist. LEXIS 178951, at *1 n. 1(S.D. Cal., Sept. 20, 2021) (citing *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011)). These courts joined a number of decisions issued prior to *Carrillo-Lopez* that likewise held rational basis review applied, and upheld the statute under that standard. *See, e.g.*, *United States v. Novondo-Ceballos*, No. 21-cr-383, 2021 WL 3570229, at *4 (D.N.M. Aug. 12, 2021); *United States v. Wence*, No. 3:20-cr-27, 2021 WL 2463567, at *10 (D. V.I. June 16, 2021); *United States v. Gutierrez-Barba*, No. 19-cr-1224, 2021 WL 2138801, at *5 (D. Ariz. May 25, 2021). This Court should do the same, and should deny Salas-Silva's motion.

      **B.**    **The *Carrillo-Lopez* Court Erred In Concluding that Section 1326 Was Motivated By Racial Animus.**

Second, as every court to examine the issue has concluded, the court in *Carrillo-Lopez* erred in concluding that racial animus was a substantial or motivating factor in the enactment of Section 1326. The district court's conclusion in *Carrillo-Lopez* rested on a series of errors of law and historical fact. At the core of its decision, *Carrillo-Lopez* largely

relied on the legislative history of the Undesirable Aliens Act of 1929 ("UAA"), which contained a predecessor version of section 1326, and which the government conceded in *Carrillo-Lopez* was motivated in part by racial animus.[1] *Carrillo-Lopez*, 555 F. Supp. 3d at 1007–10 (engaging in a lengthy discussion of the UAA, and then finding that later legislation did not "cleanse" the law in this area of discriminatory taint); *United States v. Munoz-De La O*, No. 2:20-CR-134-RMP-1, 2022 WL 508892, at *15 (E.D. Wash. Feb. 18, 2022) (noting that the assumption that section 1326 was "forever tainted" lay "at the heart" of the court's reasoning in *Carrillo-Lopez*, and declining to follow it for that reason). However, the Congress that enacted the Immigration and Nationality Act of 1952 (the "INA"), which enacted the original version of Section 1326, was entitled to a presumption of legislative good faith, as were the subsequent Congresses that enacted subsequent amended versions of Section 1326. *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) ("The allocation of the burden of proof and the presumption of legislative good faith are not changed by a finding of past discrimination.")

Yet the district court in *Carrillo-Lopez* failed to afford Congress the presumption of good faith. *Carrillo-Lopez*, 555 F. Supp. 3d at 1011 n.21 (noting the court was "not convinced" the presumption applied). Indeed, the *Carrillo-Lopez* court devoted a large portion of its opinion to an analysis concluding that Congress's silence in 1952 in the face of its purported awareness of a disparate impact on Hispanic persons gave rise to an

---

[1] To be clear, the government's concession was limited: the prosecutor agreed only that the record contained information satisfying Carrillo's burden under the first step of the *Arlington Heights* analysis—*not* that the 1929 Act was ultimately unconstitutional. And the government has come to believe that even that limited concession was improvidently made. The United States has accordingly argued in other cases that the historical record does not support the conclusion that Congress as a whole was motivated in part by discriminatory intent in enacting the 1929 Act.

inference of racial animus. *Carrillo-Lopez*, 555 F. Supp. 3d at 1011-12, 1016-17. The presumption *Carrillo-Lopez* applied was therefore one of *bad* faith, which not only has no support in the law, but which has also been explicitly disclaimed by the Supreme Court. *Abbott v. Perez*, 138 S. Ct. 2305, 2325, 201 L. Ed. 2d 714 (2018) ("[W]e have never suggested that past discrimination flips the evidentiary burden on its head" in cases requiring an *Arlington Heights* analysis.).

While *Carrillo-Lopez* pointed to other evidence that purportedly showed racial animus motivated the passage of the INA, the court's findings there rested on repeated misunderstandings of basic historical fact. It asserted that the fact that President Truman vetoed the INA stating that aspects of it would perpetuate "injustices of long standing against many other nations of the world" supported its conclusion that section 1326 was motivated by animus. *Carrillo-Lopez*, 555 F. Supp. at 1012. But as several other courts have noted, President Truman's concern revolved around the maintenance of national origins quotas, and his feelings regarding section 1326 (if any) remain unknown. *See, e.g., United States v. Munoz-De La O*, No. 2:20-CR-134-RMP-1, 2022 WL 508892, at *13 (E.D. Wash. Feb. 18, 2022) (noting Truman's concern with national origins quotas, and finding his statement shed little light on his feelings regarding 1326, let alone the motivations of Congress in passing it); *United States v. Machic-Xiap*, 552 F. Supp. 3d 1055, 1075 (D. Or. 2021) (same).

*Carrillo-Lopez* also heavily relied on the purported use of the term "wetback" by Deputy Attorney General Peyton Ford in a letter to Congress regarding proposed legislation for section 1326, and his purported proposal to make the statute "more punitive," by expanding the grounds for prosecution. *Carrillo-Lopez*, 555 F. Supp. at 1013-

15. But as noted by other courts, Deputy Attorney General Ford was providing his evaluation of the substance Congress was already considering (and did not himself propose the substance of the amendments), and the term "wetback" only appears in a quotation of a report issued by the President's Commission on Migratory Labor. *Munoz-De La O*, 2022 WL 508892, at *5. Moreover, even to the extent Deputy Attorney General's quotation of this term, which in the linguistic norms of the 1950's did not necessarily indicate discriminatory intent,[2] could be considered evidence of racial animus, it sheds little to no light on the motivations of *Congress* in passing the bill, as other courts reviewing the same historical record have recognized. *See, e.g., Munoz-De La O*, 2022 WL 508892, at *13; *United States v. Sanchez-Felix,* No. 21-CR-00310-PAB, 2021 WL 6125407, at *7 (D. Colo. Dec. 28, 2021), *reconsideration denied*, No. 21-CR-00310-PAB, 2022 WL 159814 (D. Colo. Jan. 18, 2022); *United States v. Hernandez-Lopez*, No. CR H-21-440, 2022 WL 313774, at *5 (S.D. Tex. Feb. 2, 2022).

      The district court in *Carrillo-Lopez* also misapprehended the meaning of legislation passed at roughly the same time that was colloquially referred to by some as the "Wetback

---

[2] For example, both the Ninth Circuit Court of Appeals and President Truman (who the *Carrillo-Lopez* court viewed as opposing racial discrimination in immigration legislation) used the term at various points during this period. *See Amaya v. United States,* 247 F.2d 947, 947-48 (9th Cir. 1957)*; United States v. Sugden,* 226 F.2d 281, 282 (9th Cir. 1955); *see also Johnson v. Kirkland,* 290 F.2d 440, 441 (5th Cir. 1961) (describing a statute's purpose as "protect[ing] migrant Mexican workers—referred to traditionally as 'wetbacks' because of their illegal entry across the Rio Grande—from exploitation by American employers whose normal economic power was enhanced by the illegal status of the workers"); Harry S. Truman, "Special Message to the Congress on the Employment of Agricultural Workers from Mexico" (July 13, 1951) ("The really crucial point, which this Act scarcely faces, is the steady stream of illegal immigrants from Mexico, the so-called 'wetbacks,' who cross the Rio Grande or the western stretches of our long border, in search of employment."), at https://www.trumanlibrary.gov/library/public-papers/154/special-message-congress-employment-agricultural-workers-mexico.

Bill." While the *Carrillo-Lopez* court asserted that this bill did not "punish employers who hired illegal immigrants and instead only punish[ed] the laborers themselves," Carrillo-Lopez's own expert testified that the bill criminalized the harboring or smuggling of illegal aliens, and did not "only punish[] the laborers themselves" as the *Carrillo-Lopez* court appears to have understood it. *Carrillo-Lopez*, 555 F. Supp.3d 1015-16.

Nor did the *Carrillo-Lopez* court properly consider the fact that section 1326 was passed in amended form six times after 1952, all in the absence of any evidence of discrimination, despite the fact that the most recent amended version of the statute is the one Carrillo-Lopez was actually prosecuted for violating. *Carrillo-Lopez*, 555 F.Supp.3d at 1025-26. While the district court acknowledged that these amended versions of the statute were passed, it declined to afford those subsequent Congresses the presumption of good faith, and concluded that while the amendments altered the penalties for violating section 1326 and "work[ed] to increase Section 1326's deterrent value," they were nonetheless not "substantive." *Id.* While the *Carrillo-Lopez* court explained why these changes were consistent with the INA's aim of enforcing the country's immigration laws, it provided no explanation as to why these changes should be considered merely stylistic and not substantive. *Id.* Instead, the *Carrillo-Lopez* court faulted subsequent Congresses for "not confront[ing] the racist, nativist roots of Section 1326," again presuming bad faith on the part of Congress and ignoring any basis for passing laws to enforce Congress's regulation of immigration. The *Carrillo-Lopez* court thereby reduced nearly 50 years of legislative history to a constitutional irrelevancy. This was error.

Indeed, while the same argument that was presented in *Carrillo-Lopez* has been presented to district courts in several cases following *Carrillo-Lopez*, none has reached the

conclusion that the passage of section 1326 was motivated by racial animus.[3] To the contrary, those courts have instead agreed with every other district court who considered the issue prior to *Carrillo-Lopez*.[4] This court should do the same, and should deny Salas-Silva's motion.

### C. The *Carrillo-Lopez* Court Erred In Finding That Section 1326 Would Not Have Been Enacted Absent Racial Animus.

Finally, though no other court has found it necessary to reach the issue, the *Carrillo-Lopez* court erred in concluding that section 1326 violated equal protection because it would not have passed absent racial animus. Even Carrillo-Lopez's own experts conceded that considerations of economic protectionism, national security, and foreign relations motivated the passage of Section 1326. *Carrillo-Lopez,* 555 F.Supp. 3d at 1023-1025; *see also*

---

[3] *See, e.g., United States v. Suquilanda*, No. 21 CR 263 (VM), 2021 WL 4895956, at *5 (S.D.N.Y. Oct. 20, 2021) (finding defendant had failed to meet burden, and noting that *Carrillo-Lopez* is an "outlier" among district courts that have otherwise held to the contrary); *United States v. Munoz-De La O*, No. 2:20-CR-134-RMP-1, 2022 WL 508892, at *1–5 (E.D. Wash. Feb. 18, 2022); *United States v. Sifuentes-Felix*, No. 21-CR-337-WJM, 2022 WL 293228, at *1 (D. Colo. Feb. 1, 2022); *United States v. Hernandez-Lopez*, No. CR H-21-440, 2022 WL 313774, at *3–7 (S.D. Tex. Feb. 2, 2022); *United States v. Sanchez-Felix*, No. 21-CR-00310-PAB, 2021 WL 6125407, at *8 (D. Colo. Dec. 28, 2021), *reconsideration denied*, No. 21-CR-00310-PAB, 2022 WL 159814 (D. Colo. Jan. 18, 2022); *United States v. Maurico-Morales*, No. CR-21-298-R, 2022 WL 99996, at *1 (W.D. Okla. Jan. 10, 2022); *United States v. Muria-Palacios*, No. 2:21-CR-00023-JAM, 2022 WL 956275, at *2 (E.D. Cal. Mar. 30, 2022); *United States v. Ponce-Galvan*, No. 21-CR-02227-H-1, 2022 WL 484990, at *3 (S.D. Cal. Feb. 16, 2022) (noting defendant had failed to meet burden, and had presented no evidence of animus motivating amendments subsequent to 1952); *United States v. Gamez-Reyes*, No. 21-CR-00123-CMA, 2022 WL 990717, at *3 (D. Colo. Mar. 31, 2022).

[4] *See, e.g., United States v. Novondo-Ceballos*, 554 F. Supp. 3d 1114, 1122–23 (D.N.M. 2021); *United States v. Machic-Xiap*, 552 F.Supp.3d 1055 (D. Or. 2021); *United States v. Wence*, No. 3:20-CR-0027, 2021 WL 2463567, at *4–5 (D.V.I. June 16, 2021); *United States v. Medina Zepeda*, No. CR 20-0057 FMO, 2021 WL 4998418, at *3 (C.D. Cal. Jan. 5, 2021); *United States v. Palacios-Arias*, No. 20-62 (E.D. Va. 2020); *United States v. Gallegos-Aparicio*, No. 19-2637, 2020 WL 7318124 (S.D. Cal. 2020) (considering identical challenge to § 1325); *United States v. Rios-Montano*, No. 19-CR-2123-GPC, 2020 WL 7226441 (S.D. Cal. 2020) (§ 1325).

*United States v. Palacios Arias*, No. 3:20-cr-62-JAG (E.D.Va. Oct. 13, 2020) ECF No. 37 at 7-8 (denying identical motion in part on ground that defense experts conceded economic motivations for passage of Section 1326). However, the district court in *Carrillo-Lopez* dismissed this evidence, even while conceding they were motivating factors, because "racial animus is also at play." *Id.* at 1024. But in an *Arlington Heights* analysis, a court only reaches a consideration of whether a statute would have been passed in the absence of discriminatory animus if it has already found that such an animus is "at play." While it was error for the *Carrillo-Lopez* to so conclude, the district court compounded that error by eliminating the third part of the *Arlington Heights* analysis and concluding that the purported evidence of racial animus motivating the passage of section 1326 obviated the need for further inquiry.

In doing so, the court also disregarded evidence that a nondiscriminatory intent can be inferred from the obvious operation of the statute, and the fact that most countries around the world criminalize entering their borders without permission.[5] While the *Carrillo-Lopez* court described this evidence as "nonresponsive," it offered no reasoned basis as to why it declined to consider this evidence. *Carrillo-Lopez*, 555 F.Supp.3d at 1025.

More fundamentally, the repeated amendments to Section 1326 since 1952 obviate any need to speculate about whether Congress would have enacted the statute absent discriminatory motives. The district court's two reasons for dismissing the relevance of these post-1952 actions are unavailing. The first—that the amendments "do not reflect any

---

[5] *See* The Law Library of Congress, *Criminalization of Illegal Entry Around the World* 2 (Aug. 2019) *available at loc.gov/law/help/illegal-entry/illegal-entry.pdf* (noting that "162 countries that have laws criminalizing or otherwise punishing illegal entry," that "124 countries that treat illegal entry as a crime," and that "criminal sanctions may apply if aggravating circumstances are present" in countries that treat illegal entry as a civil matter).

change of Congressional intent, policy, or reasoning," *Carrillo-Lopez*, 555 F.Supp.3d at 1026—reveals a basic misunderstanding of the legislative process. The decision to alter a statute's maximum penalties and penalty structure necessarily means that Congress has evaluated existing policy, decided it does not strike the right balance, and altered that balance. *See United States v. Suquilanda*, No. 21-cr-263, 2021 WL 4895956, at *5 (S.D.N.Y. Oct. 20, 2021) (post-1952 amendments have served "to enhance penalties or otherwise rebalance the deterrent effect of the law"). The court's second reason was that "at no point has Congress confronted the racist, nativist roots of Section 1326." *Carrillo-Lopez*, 555 F.Supp.3d at 1026. But the *Carrillo-Lopez* court conceded that no "binding precedent" supported such a requirement and instead drew it from solo concurrences in two recent Supreme Court decisions. *Id.* (citing *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2274 (2020) (Alito, J., concurring); *Ramos v. Louisiana*, 140 S. Ct. 1390, 1410 (2020) (Sotomayor, J., concurring in part)). And a requirement that Congress "grapple" (*Carrillo-Lopez*, 555 F.Supp.3d at 1026) with prior laws makes little sense in a scenario like this one, where allegations that such laws were driven by discriminatory intent have been aired only recently. In sum, the district court's opinion in *Carrillo-Lopez* improperly disregarded incontrovertible evidence that section 1326 would have passed, absent racial animus, in favor of holding Congress to a burden that has no basis in law. It was error to do so, and this Court should decline to follow it.

**Conclusion**

For the foregoing reasons, the Court should summarily deny Salas-Silva's Motion to Dismiss for failure to include points and authorities or, in the alternative, deny the motion because it lacks merit

Respectfully submitted this 2nd day of May 2022.

CHRISTOPHER CHIOU  
Acting United States Attorney

*s/ Randolph J. St. Clair*  
RANDOLPH J. ST. CLAIR  
Assistant United States Attorney